IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 12, 2011

**STATE OF TENNESSEE v. KENNETH DUNLAP**

**Appeal from the Circuit Court for Madison County**
**Nos. 10-128, 10-137, 10-138      Donald H. Allen, Judge**

**No. W2010-01619-CCA-R3-CD  - Filed May 25, 2011**

The defendant entered pleas of guilty in the Madison County Circuit Court to five counts of aggravated burglary, *see* T.C.A. § 39-14-403(a) (2006); two counts of theft of property valued at $1,000 or more but less than $10,000, *see id.* § 39-14-103, -105(3); three counts of theft of property valued at more than $500 but less than $1,000, *see id.* § 39-14-103, -105(2); one count of vandalism of property valued at more than $500 but less than $10,000, *see id.* § 39-14-408(a); one count of vandalism of property valued at $500 or less, *see id.* § 39-14-408, -105(2); and tampering with evidence, *see id.* § 39-16-503(a)(1).  The trial court imposed a total effective sentence of 15 years to be served in the Department of Correction. In this appeal, the defendant contends that the trial court erred by ordering consecutive sentencing.  Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and ROBERT W. WEDEMEYER, J., joined.

Gregory D. Gookin, Assistant District Public Defender, for the appellant, Kenneth Dunlap.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; Jerry Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On May 27, 2010, the defendant entered "blind" or "open" guilty pleas in case number 10-128 to one count of aggravated burglary; one count of theft of property valued at more than $500 but less than $1,000; and one count of vandalism of property valued at

$500 or less. The defendant also entered guilty pleas in case number 10-137 to three counts of aggravated burglary; one count of theft of property valued at $1,000 or more but less than $10,000; and two counts of theft of property valued at more than $500 but less than $1,000. Finally, the defendant pleaded guilty in case number 10-138 to one count of aggravated burglary; one count of theft of property valued at $1,000 or more but less than $10,000; one count of vandalism of property valued at more than $500 but less than $1,000; and tampering with evidence. The State provided the following recitation of facts:

> Docket No. 10-128, the State would show at trial that on or about November the 6th, 2009, Ms. Alisha Collins' home was burglarized at 72 Charlesmeade Drive here in Jackson, Madison County. This occurred sometime after she left for work at about 8:00 that morning and about 1:00 that afternoon, [the defendant] along with a codefendant, Mr. Caldwell, went into Bill's Pawn Shop here in Jackson . . . and tried to pawn a laptop computer. [T]he owner of that pawn shop . . . found the name on there of Ms. Collins' boyfriend, your Honor. . . . He contacted them about the laptop and then they discovered their home had been burglarized and contacted law enforcement. [The shop owner] did not buy the laptop, but took down the tag number because the two individuals left the pawn shop. Mr. Caldwell . . . and [the defendant were ] later identified by photo lineup by [the owner] and his wife. . . . The back door had been kicked in on the property and that's how entrance was gained and damage was done to that.
>
> . . . .
>
> Docket No. 10-137 and 138 are connected . . . in the sense that on or about November 13, 2009, a week after the other one I talked about, a neighbor in the Beinville Street area noticed three black males burglarizing his neighbor's residence, the neighbor's residence being 100 Beinville Street.
>
> . . . Law enforcement was contacted by this neighbor who suspected a burglary. As sheriff's deputies were arriving at that location, they intercepted a suspect's vehicle and they turned around to follow it and the vehicle stopped and three individuals got out of the vehicle and fled. They were able to apprehend two of the individuals pretty quickly and that was

[the defendant] . . . and Xavier Thompson . . . . But when they stopped the car and observed the car, they found stolen property in the vehicle from 100 Beinville Street, from 92 Beinville Street, from 618 Hopper Barker Road and also from 95 Beinville Street. All of those victims were contacted and it was discovered that their homes had all been burglarized that day while the victims were not at home that morning and their stolen property was then recovered from this vehicle.

In Docket No. 10-137, . . . [the defendant] did unlawfully enter the habitation of Tommy Maxwell and Myra Maxwell . . . and . . . did also knowingly obtain or excercise control over property being electronic equipment and jewelry over the value of $1,000 . . . . In Count 3 he did unlawfully enter the habitation of Robert Doyle . . . and he did knowingly obtain or exercise control over property being jewelry over the value of $500 . . . . In Count 5 that he did unlawfully enter the habitation of Pamela Humphrey . . . . [and] he did knowingly obtain or exercise control over property being pills, money and miscellaneous items over the value of $500 . . . .

He was also connected to that indicted in Docket No. 10-138 for that same date November 13, 2009. That he did unlawfully enter the habitation of Rose Weddle . . . . and did knowingly obtain or exercise control over property being electronics, jewelry and miscellaneous items over the value of $1,000 . . . and did knowingly cause damage or destruction of property belonging to Ms. Weddle over the value of $500. That was for damage to her home. In Count 4, . . . [the defendant] was giv[ing] a statement to law enforcement regarding this matter and that he grabbed a page of the statement and the officer told him not to destroy the statement because it's evidence and he proceeded to rip up the first page of his statement and thus he did knowingly after an investigation or official proceeding was pending or in progress destroy an item to impair the availability as evidence and thus tampering with evidence.

The trial court accepted the defendant's pleas of guilty and scheduled a sentencing hearing to determine the length and manner of service of the sentences to be imposed.

At the July 12, 2011 sentencing hearing, burglary victim Alisha Collins testified that the "carport door" to her home was "kicked in" and that the defendant and codefendant took her television and two laptops as well as destroyed some of her belongings while they were inside the home. She said that one laptop was recovered from Bill's Pawn Shop, but the television and second laptop were never found. She asked the trial court to impose a "fair" sentence. Her financial loss totaled more than $1,000.

Burglary victim Robert Doyle testified that two doors were kicked in at his home and that a ring was taken during the burglary. Mr. Doyle said that the ring was recovered and returned to him but that he had to pay out of his own pocket to repair the damage to the two doors. His financial loss totaled some $1,331.

Burglary victim Pamela Humphrey testified that the defendant and codefendant damaged a door to her home and that the cost to repair the door as well as her lost wages totaled $250.

Burglary victim Tommy Maxwell testified that the defendant and codefendant took jewelry, shoes, and antique coins from his home and that his insurance did not reimburse him for the loss of the coins. He estimated his total financial loss as more than $500.

The parties stipulated that the financial loss suffered by burglary victim Rose Weddle was $500.

The presentence report established that the 18-year-old defendant had previous convictions of criminal trespassing and vandalism as well as a juvenile adjudication of reckless endangerment and sentence of probation that occurred only three months prior to the defendant's eighteenth birthday and was, as a result, being supervised by adult probation services. The defendant also had a juvenile adjudication of aggravated burglary in January 2008. The defendant had previously held jobs at McDonald's, Long John Silver's, and as a janitor at an office building, but he had been unemployed since August 2009.

At the conclusion of the sentencing hearing, the trial court imposed sentences of five years for each conviction of aggravated burglary, five years for the conviction of tampering with evidence, three years and six months for each conviction of theft of property valued at more than $1,000 but less than $10,000, two years for each conviction of theft of property valued at more than $500 but less than $1,000, two years for the conviction of

vandalism of property valued at more than $500 but less than $1,000, and 11 months and 29 days for the conviction of theft of property valued at $500 or less. In determining sentence length, the trial court found that the defendant had a history of criminal convictions in addition to those necessary to establish the appropriate range, *see* T.C.A. § 40-35-114(1); that the defendant was a leader in the commission of the offenses, *see id.* § 40-35-114(2); that the defendant had failed to comply with a sentence involving release into the community, *see id.* § 40-35-114(8); that the defendant possessed a firearm during the commission of the offense based upon the theft of a handgun from one residence, *see id.* § 40-35-114(9); that the defendant was on probation when he committed the offenses, *see id.* § 40-35-114(13); and that the defendant had a juvenile adjudication for an offense that would have been a felony if committed by an adult, *see id.* § 40-35-114(21). The court also found in mitigation that the defendant had accepted responsibility for his actions and had expressed remorse. *See id.* § 40-35-113(13).

Regarding the sentence alignment, the court ordered that the convictions within each case should be served concurrently to one another, for an effective sentence in each case of five years, but that these three effective sentences should be served consecutively to one another for a total effective sentence of 15 years. The court based its decision to impose partially consecutive sentencing on its conclusion that the defendant's record of criminal activity was extensive, *see id.* § 40-35-115(b)(2), and that the defendant was on probation when he committed the offenses in each case, *see id.* § 40-35-115(b)(6). The court also ordered that the 15-year sentence be served consecutively to a previously-imposed 11-month and 29-day sentence.

The trial court denied all forms of alternative sentencing, concluding that the nature and circumstances of the criminal conduct and the defendant's failure to comply with recent stints on probation militated against the imposition of alternative sentencing. The court concluded that the defendant's record of violating probation evinced poor amenability to correction. Finally, the court concluded that a sentence of 15 years' incarceration was "particularly suited to provide an effective deterrent not only to [the defendant] but also to others who are willing to commit such" offenses.

In this appeal, the defendant asserts that the trial court erred by ordering consecutive service of the 5-year sentences imposed in each case. The State contends that consecutive sentencing was appropriate.

When considering challenges to the length and manner of service of a sentence this court conducts a de novo review with a presumption that the determinations of the trial court are correct. T.C.A. § 40-35-401(d) (2006). This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the

sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The appealing party, in this case the defendant, bears the burden of establishing impropriety in the sentence. T.C.A. § 40-35-401, Sentencing Comm'n Comments; *see also Ashby*, 823 S.W.2d at 169. If our review of the sentence establishes that the trial court gave "due consideration and proper weight to the factors and principles which are relevant to sentencing under the Act, and that the trial court's findings of fact . . . are adequately supported in the record, then we may not disturb the sentence even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). In the event the record fails to demonstrate the required consideration by the trial court, appellate review of the sentence is purely de novo. *Ashby*, 823 S.W.2d at 169.

> In making its sentencing decision, the trial court must consider:
>
> (1) The evidence, if any, received at the trial and the sentencing hearing;
> (2) The presentence report;
> (3) The principles of sentencing and arguments as to sentencing alternatives;
> (4) The nature and characteristics of the criminal conduct involved;
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
> (6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
> (7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b). The trial court should also consider "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." *Id.* § 40-35-103(5).

The trial court may impose consecutive sentences if it finds by a preponderance of the evidence that:

> (1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

T.C.A. § 40-35-115(b). Here, the trial court determined that the defendant was an offender whose record of criminal activity is extensive and that the defendant had committed the offenses at issue on appeal while on probation. The record supports these findings. Just shy of his nineteenth birthday, the defendant had managed to accumulate 15 criminal convictions, 12 of them for felony offenses. The record also established that the defendant committed the 13 offenses in case numbers 10-128, 10-137, and 10-138 while he was serving a probationary sentence imposed for convictions of criminal trespassing and vandalism.

Accordingly, the judgments of the trial court are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE